# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



William James and
Terri Tucker (Lowe),
Plaintiffs,

Civil Action No. 18-13553

District Court Civil Action No. 1:17-cv-01181-TWT

v.

Barbara Hunt, Tyler Perry,
Oprah Winfrey, et al., and
Judge Thomas W. Thrash, Jr.
Defendants.

Confidential: Judicial Complaint No. 11-25-90153 (pending)

Plaintiffs' Motion to Recall Mandate (Fraud on the Court, Manifest Injustice, and Due Process Violations)

---

## PLAINTIFFS' MOTION TO RECALL MANDATE (FRAUD ON THE COURT, MANIFEST INJUSTICE, AND DUE PROCESS VIOLATIONS)

---

Appellate Action No. 18-13553

**NOTICE: Statement of Good Cause for Delay in Filing Motion to Recall Mandate (FRAP 41-1(c); 11th Cir. R. 41-1(c))**

Pursuant to 11th Cir. R. 41-1(c), the undersigned respectfully submits the following statement explaining with specificity why the motion to recall the mandate was not filed within one year of its issuance:

Between 2020 and 2024, the undersigned faced a series of extraordinary, unforeseeable, and overwhelming life events that directly impaired her ability to pursue appellate remedies in a timely manner:

COVID-19 Pandemic Disruptions (2020–2022):

The pandemic caused substantial personal, financial, and logistical hardship, including loss of income and disruption of normal support systems.

**Catastrophic Family Losses and Caregiving Responsibilities:**

- In March 2021, the undersigned's sister passed away during the height of the pandemic, compounding the emotional and logistical burden on the family.

- In June 2020, the undersigned's adult son returned home from a 45-day hospital stay, became home-hospice bound, and ultimately passed away on August 29, 2021.

- During this period, the undersigned's mother suffered severe and unexplained health complications following her second COVID-19 vaccination, becoming immobile and fully dependent on the undersigned for all aspects of care and life management.

- In 2022, the undersigned was required to relocate to New York to hospitalize her mother, coordinate her rehabilitation, and manage her affairs. Her

mother's health continued to decline, resulting in multiple hospitalizations and rehabilitation stays until her passing on April 23, 2023.

- In January 2023, the undersigned's stepmother also passed away, further intensifying the period of bereavement and responsibility.

- The undersigned's stepfather (her mother's husband) passed away one month later, on May 24, 2023, necessitating the undersigned's sole responsibility for their estate and affairs.

## Continued Family Crises (2024):

- In May 2024, the undersigned assumed primary custody and care of a four-year-old grandchild.

- Shortly thereafter, the undersigned's brother became critically ill and passed away on November 26, 2024, again requiring the undersigned's presence and management of family matters.

## Discovery of New Evidence (2025):

- In 2025, the undersigned discovered additional predicate acts by the Defendants and further evidence of fraud upon the court, which materially affect the basis for seeking recall of the mandate.

Fraud Upon the Court: No Statute of Limitations and Controlling Authority

This recall mandate relies heavily on the existence of fraud upon the court—a doctrine for which there is no statute of limitations. The Supreme Court has consistently recognized that "fraud upon the court" is a most serious form of fraud that "strikes at the integrity of the judicial process" and can be raised at any time:

- **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244–45 (1944):**

  ("[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." The Court vacated a judgment years after entry due to fraud on the court.)

- **United States v. Throckmorton, 98 U.S. 61, 65–66 (1878):**

  (Distinguishing between intrinsic and extrinsic fraud; extrinsic fraud such as fraud upon the court warrants relief even after judgment is final.)

- **Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575, 580 (1946):**

  ("[F]raud on the court is not your 'garden-variety' fraud but, rather, is limited to fraud that seriously affects the integrity of the normal process of adjudication.")

- **Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1274 (11th Cir. 2004) (en banc):**

  ("Fraud upon the court is a recognized basis for relief from judgment, and courts have inherent power to vacate judgments at any time for such fraud.")

- **Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972):**

  ("Fraud upon the court... can be raised at any time.")

The Eleventh Circuit has expressly held that "[t]here is no time limit for setting aside a judgment for fraud upon the court." Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985) (relying on Hazel-Atlas and Universal Oil).

## Good Cause for Delay: Extraordinary Circumstances

The Supreme Court and Eleventh Circuit recognize that extraordinary circumstances beyond a litigant's control constitute "good cause" for procedural delays, especially where the delay is not the result of neglect but of events such as illness, bereavement, or other significant hardships:

- **Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993):**

  **(Excusable neglect is a flexible standard and includes "circumstances beyond the party's control.")**

- **Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 998 (11th Cir. 1997):**

  (Courts consider "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.")

**Application to Present Facts**

These cumulative events, occurring in rapid succession and involving significant caregiving, bereavement, and legal responsibilities, made it impossible for the undersigned to file the instant motion sooner. The delay was not due to neglect or lack of diligence, but rather to circumstances wholly beyond the undersigned's control.

Accordingly, good cause exists under 11th Cir. R. 41-1(c) for the delay in seeking recall of the mandate, and the undersigned respectfully requests the Court accept the motion for filing and grant such further relief as is just.

# I. STATEMENT OF THE CASE

Plaintiffs William James and Terri Tucker (Lowe), pro se, respectfully move this Court, pursuant to Federal Rule of Appellate Procedure 41, controlling Supreme Court precedent, and this Court's inherent supervisory powers, to recall the mandate and grant extraordinary relief. This request arises from pervasive fraud on the court, manifest injustice, and systemic due process violations that originated in Plaintiffs' Motion to Recall Mandate (Fraud on the Court, Manifest Injustice, and Due Process Violations) 18-13553 1 Appeal No. 17-14866 and directly resulted in the piecemeal, prejudicial proceedings now before this Court in Appeal No. 18-13553. In 17-14866, the record is replete with structural and procedural violations: judicial conflict and refusal to recuse, omission and concealment of critical filings (including alteration of Doc 85), improper closure and reopening of the case, manipulation of party status, and entry of void orders after notice of appeal. The district court repeatedly shifted its characterization of the case—from a Civil RICO action to a copyright infringement case—whenever it suited the procedural objectives of the court and defendants, depriving Plaintiffs of a unified, merits based review and compounding prejudice. Central to these violations, Judge Thomas W. Thrash, Jr. remained a named defendant throughout the proceedings and was never removed by a Chief Judge or three-judge panel, as required for

impartial adjudication. Despite his disqualifying status, Judge Thrash continued to rule on dispositive and post-judgment matters— even after Plaintiffs' notice of appeal divested the district court of jurisdiction. No order was ever entered reassigning the case to a neutral judge, and the docket reflects that Judge Thrash both presided and benefited from his own rulings, in direct violation of 28 U.S.C. § 455 and due process. See Liljeberg v. Health Plaintiffs' Motion to Recall Mandate (Fraud on the Court, Manifest Injustice, and Due Process Violations) Services Acquisition Corp., 486 U.S. 847, 864–65 (1988); Caperton v. Massey, 556 U.S. 868, 881 (2009). The necessity of adding Judge Thrash as a defendant arose from newly discovered, material conflicts of interest and procedural manipulation. During the proceedings, Plaintiffs uncovered a potential familial connection between Judge Thrash and the Tyler Perry Company through the TV show Too Close to Home (involving Annie Thrash), raising legitimate questions of impartiality. This was compounded by Defendants' procedural maneuvering— specifically naming Judge Thrash as presiding judge after Plaintiffs had established their claims—and by a documented pattern of adverse treatment of pro se litigants, as illustrated in William Windsor v. Thrash. The district court's refusal to transmit a full record, entry of void orders while divested of jurisdiction (contrary to Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982)), and manipulation of

party termination prevented the Eleventh Circuit from reviewing the complete case and denied Plaintiffs impartial adjudication. Improper routing and partial transmission of documents, creation of duplicative appeals and fees, and the imposition of restrictions on Plaintiffs' access to the court further fragmented appellate review and insulated prior irregularities from scrutiny.

A pivotal egregious defect was deliberate omission of Document 85—Plaintiffs' operative amended complaint/proof of service—from the appellate record in Eleventh Circuit Case No. 17-14866. Document 85 established all defendants were in default as of the amended complaint, and Plaintiffs timely moved for default judgment. Withholding Doc. 85 from appellate review was sole reason any appeal was necessary. Had defaults been adjudicated in accordance with the record, there would have been no basis for subsequent summary judgment/injunction, or appeals.

Numerous other critical filings were withheld from judicial review, compounding structural errors and due process violations:

- Doc. 15: Copyright infringement predicate act (Judge Story).
- Doc. 31: Reassignment Judge Thrash by name.
- Doc. 42: Objection to Doc. 31.
- Docs. 16–19, 23, 25, 34–37, 39, 79, 83, 84, 98: Returns of service.

- Doc. 63: Preliminary Discovery Plan.

- Docs. 64, 65, 66: Plaintiffs' discovery and related pleadings.

- Doc. 73: Proof of service (Processor, California, Jim Gladstone, sworn affidavit conflict with Defendants' Doc. 67-1 by Jim Gladstone).

- Doc. 91: Reply Doc. 72 to strike Doc. 67 (threats).

- Doc. 94: Summons for Judge Thrash.

- Doc. 100: Proof of service on Judge Thrash.

- Doc. 103: Motion to transmit entire record to appellate court.

- Doc. 116: Judges' Response.

- Doc. 117: Response to Doc. 116.

- Doc. 122: Defendants' opposition to default judgment (Doc. 119/Doc. 85).

- Doc. 123: Opposition to Defendants' clarification for discovery.

- Doc. 141: Writ of Mandamus.

- Doc. 142: Reconsideration on Orders Doc. 124–139.

- Doc. 143: Application/Notice of appeal.

The record misleadingly suggested Plaintiffs' default arguments pertained to earlier defaults addressed in Document 119. Plaintiffs' core argument concerned default and timely requests for default judgment established by Document 85—a default wholly concealed from appellate review. This misrepresentation led

appellate court to overlook the unadjudicated default on the record and prejudice caused by its omission.

Plaintiffs' Motion to Recall Mandate (Fraud on the Court, Manifest Injustice, and Due Process Violations) 18-13553 3. A pivotal feature of this misconduct was the district court's use of an injunction as a procedural shield to prevent Plaintiffs from pursuing unadjudicated civil RICO claims, to conceal judicial and party misconduct, to bar further filings or argument without court permission. The injunction, entered while the district court was divested of jurisdiction, served to insulate all prior irregularities and block meaningful review. In addition, Plaintiffs have filed post-judgment motions in the district court under Rule 60(b) and 60(d)—partly pending or have been improperly denied in violation of due process and jurisdictional limitations. The recall of the mandate is essential to ensure that these post-judgment motions, and all underlying claims of judicial misconduct and fraud upon the court, are fully heard and adjudicated on the merits. Plaintiffs respectfully request that this Court make clear that no prior mandate, ruling, or appellate precedent shall bar or preclude Plaintiffs from obtaining full review and relief on all such issues, so that the integrity of the judicial process may be restored and all claims of misconduct properly addressed. The cumulative effect of these defects compels recall of the mandate, vacatur of all tainted orders and judgments,

and reassignment to a neutral judge to restore the integrity of the judicial process

and Plaintiffs' constitutional rights.

.

# TABLE OF CONTENTS

**NOTICE: STATEMENT OF GOOD CAUSE FOR DELAY IN FILING**

**MOTION TO RECALL MANDATE**    1

**I. STATEMENT OF THE CASE**    7

**II. PROCEDURAL HISTORY AND JURISDICTIONAL DEFECTS**    18

    A. Acknowledgement of Jurisdiction No Longer in District Court    18

    B. Amended Complaint Default and Documents Not Transmitted    18

    C. Procedural Manipulation    19

**III. ARGUMENT**    19

**A. ONGOING VIOLATIONS AND POST-JUDGMENT ABUSE**    19

    1. Prejudice on Orders Although No Jurisdiction (Shows Bias)    19

    2. Violations of Supreme Court Precedence on Post Judgment Motions    19

    3. Coordinated Collusion of The Defendant Judge and Co-Defendants    20

**B. DUE PROCESS, FRAUD ON THE COURT, AND**

**MANIFEST INJUSTICE**    20

    1. Plaintiffs have been systematically denied    20

    2. Pattern of Misrepresentation, Collusion, and Judicial Misconduct    22

    3. Improper Termination of Parties and Case    22

Plaintiffs' Motion to Recall Mandate
(Fraud on the Court, Manifest Injustice,
and Due Process Violations) 18-13553      13

4. Procedural Manipulation and Denial of Due Process (Omission of Lionsgate and Barbara Hunt) 23

5. Procedural Manipulation and Denial of Due Process (Defendant Judge as Adjudicator) 24

6. Judicial Misconduct 27

7. Procedural Default After Document 85 and the Cascade of Prejudice 30

8. Post-Document 170 Abuses and Denial of Post-Judgment Motions 31

9. No Meaningful Review of Rule 60(b) or Civil RICO 32

10. Mandates' Effect on Plaintiffs' Third Appeal

11. Jurisdictional Defect, Perjury, and Record Manipulation 33

**IV. NEED FOR RECALL OF MANDATE AND CONSOLIDATED**
**REVIEW** 36

**V. CONCLUSION RELIEF REQUESTED** 38

**CERTIFICATE OF COMPLIANCE** 42

**CERTIFICATE OF SERVICE** 43

**CERTIFICATE OF INTERESTED PERSONS (CIP) AND**
**CORPORATE DISCOSURE** 40

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Calderon v. Thompson,*

523 U.S. 538 (1998)                                                         4, 17

*Caperton v. A.T. Massey Coal Co.,*

556 U.S. 868 (2009)                                                     4, 8, 13, 17

*Foman v. Davis,*

371 U.S. 178 (1962)                                                        11, 14

*Griggs v. Provident Consumer Disc. Co.,*

459 U.S. 56 (1982)                                                          8, 17

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*

322 U.S. 238 (1944)                                                         6, 17

*Lawlor v. National Screen Service Corp.,*

349 U.S. 322 (1955)                                                         4, 14

*Liljeberg v. Health Services Acquisition Corp.,*

486 U.S. 847 (1988)                                                       6, 13, 17

*Meehan v. Snow,*

652 F.2d 274 (2d Cir. 1981)                                                  14

| Cases | Page(s) |
|---|---|
| Offutt v. United States, | |
| 348 U.S. 11 (1954) | 12 |
| *United States v. Beggerly,* | |
| 524 U.S. 38 (1998) | 8, 17 |
| *United States v. Wade,* | |
| 336 U.S. 684 (1949) | 6, 17 |
| *Bounds v. Smith,* | |
| 430 U.S. 817 (1977) | 13, 14 |
| *Taylor v. Sterrett,* | |
| 640 F.2d 663 (5th Cir. 1981) | 8 |
| *S.E.C. v. Smyth,* | |
| 420 F.3d 1225 (11th Cir. 2005) | 14 |
| *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* | |
| 515 F.2d 1200 (5th Cir. 1975) | 13 |
| *United States v. $55,518.05 in U.S. Currency,* | |
| 728 F.2d 192 (3d Cir. 1984) | 14 |

| Statute/Rule | Page(s) |
|---|---|
| 18 U.S.C. § 1503 | 13 |
| 28 U.S.C. § 455 | 4, 8, 13 |
| Federal Rule of Appellate Procedure 41 | 1 |
| Federal Rule of Civil Procedure 55 | 13 |
| Federal Rule of Civil Procedure 60(b), 60(d) | 13, 14 |
| Federal Rule of Appellate Procedure 10(a) | 3 |
| Federal Rule of Appellate Procedure 27 | 1 |

## II. PROCEDURAL HISTORY AND JURISDICTIONAL DEFECTS

### A. Acknowledgement of Jurisdiction No Longer in District Court

After Plaintiffs filed their notice of appeal in Case No. 17-14866 (Doc. 144, Oct.

26, 2017), Judge Thrash expressly acknowledged in Doc. 154 (Nov. 20, 2017) that

the district court was divested of jurisdiction. Nevertheless, he continued to issue

substantive orders (Doc. 95-96, 124-139), including for summary judgment (Doc.

157), an All Writs Act injunction Order (Doc. 168), and further final clerk entry

order (Doc. 169), all while remaining a named defendant and never reassigning the

case to a neutral judge, and Plaintiffs Recusal (Doc. 120), Order (Doc. 137) .

### B. Amended Complaint Default and Documents Not Transmitted to Appellate Court

Key omitted documents: Doc. 85 (Amended Complaint, never answered by

defendants), Doc. 117 (Plaintiffs' opposition to Judge Thrash's motion to dismiss

himself from Doc. 85), Doc. 31 (Defendants' motion to transfer to Judge Thrash),

and exhibits (Docs. 86, 88) and Proofs of Service (Doc. 75, 77, 79, 80, 83, 84, 94,

100) were withheld from appellate review, materially prejudicing Plaintiffs' rights.

**Defendants' default:** Defendants failed to answer Doc. 85; only Judge Thrash and

the AUSA responded August 31, 2017 (Doc. 116), further compounding the

conflict.

**Improper use of summary judgment and injunction:** On February 5, 2017

(Doc. 157) Order (Doc.168) granted summary judgment and an injunction under

the All Writs Act, using state law where controlling federal law was lacking,

despite the case being on appeal and defendants in default, by a Defendant Judge.

## C. Procedural Manipulation

The judge terminated all parties on October 19, 2017, but left Lionsgate

unresolved, creating a "double-door" to later grant additional relief in (Doc. 168).

## III. ARGUMENT

## A. ONGOING VIOLATIONS AND POST-JUDGMENT ABUSE

### 1. Prejudice on Orders Although No Jurisdiction (Shows Bias)

Despite the pendency of the appeal (Doc. 144) October 26, 2017, Judge Thrash

continued to violate jurisdictional limits and Plaintiffs' rights:

In (Doc. 154) November 20, 2017, he directed the clerk to block Plaintiffs' filings,

targeting them alone.

### 2. Violations of Supreme Court Precedence on Post Judgment Motions

In (Doc. 208), the Defendant Judge Thrash purported to block Rule 60(b) motions

and post-judgment relief by referencing his prior injunction (Doc. 168)—contrary

to U.S. Supreme Court precedent that post-judgment motions cannot be barred by

such injunctions (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Beggerly*, 524 U.S. 38 (1998)).

### 3. Coordinated Collusion of The Defendant Judge and Co-Defendants

Defendants and their counsel engaged in ex parte letter motions (Docs. 192, 198, 206) to the clerk and court, seeking to block Plaintiffs' post-judgment filings and further defaulting by failing to answer those motions.

## B. DUE PROCESS, FRAUD ON THE COURT, AND MANIFEST INJUSTICE

### 1. Plaintiffs have been systematically denied

- An impartial tribunal (Judge Thrash remained a defendant and never recused or was removed);

- The right to default judgment and a merits-based adjudication on their RICO claims;

- Access to the courts and the ability to have their filings heard, including Rule 60(b) motions, as a matter of right;

- A complete and accurate appellate record, due to the withholding of critical documents and exhibits.

The district court's orders were entered without jurisdiction, are void ab initio, and were procured by fraud on the court and manifest abuse of discretion. The "double-

door" doctrine was abused to provide defendants with relief while foreclosing Plaintiffs' rights, and the court's conduct—singling out pro se litigants, using pejorative language, and coordinating with defense counsel—demonstrates structural bias and prejudice.

## 2. Pattern of Misrepresentation, Collusion, and Judicial Misconduct

Plaintiffs respectfully note that Document 120—our motion for recusal of Judge Thrash—was in fact submitted to the appellate court prior to the issuance of at least seventeen subsequent orders by Judge Thrash, all while he remained a named defendant after Document 85 (the amended complaint). However, the appellate court was deprived of the full context and evidentiary basis for recusal because the district court and/or clerk withheld from the appellate record:

- Document 85 (the amended complaint naming Judge Thrash as a defendant),
- Document 94 (the summons issued to Judge Thrash),
- Document 100 (proof of service of the summons to Judge Thrash, including certified mail receipt to the U.S. Attorney General for service on the judge).

Had the appellate court received these critical documents alongside Document 120, it would have been unmistakably clear that Judge Thrash was a party to the action and legally required to recuse under 28 U.S.C. § 455. The omission of these filings materially prejudiced Plaintiffs by concealing the judge's disqualifying status and

undermining the merits of the recusal motion. As a result, the appellate court did not act to enforce recusal or prevent Judge Thrash from continuing to rule in the lower court, compounding the due process violations and structural error. This concealment constitutes fraud on the court and a fundamental defect requiring vacatur of all subsequent orders and recall of the mandate.

### 3. Improper Termination of Parties and Case

When Plaintiffs noted that Lionsgate and Barbara Hunt were omitted from the district court's "final order" (Doc. 138, Oct. 19, 2017), we reasonably believed the court was recognizing their default—Lionsgate for failure to answer and Barbara Hunt for jurisdictional and default grounds under 18 U.S.C. § 1965(b), (d)—and would address default judgment separately. This belief was based on the record:

- Plaintiffs had moved for summary judgment (Doc. 61); Defendants responded (Doc. 67), attaching Jim Gladstone's affidavit (67-1) claiming Lionsgate's late response was due to mailroom delay with the original complaint (Doc. 1).

- Plaintiffs' counter-affidavit (Doc. 73, omitted from appellate review) from ACS Process Server confirmed Jim Gladstone was personally served, detailing the encounter and identification.

- Gladstone was represented as sharing counsel (Richard Gordon) with Tyler Perry and Oprah Winfrey (Doc. 52), undermining any delay claim.

Given these facts, we assumed the judge's exclusion of Lionsgate and Barbara Hunt from dispositive orders was implicit recognition of default, and that the court would rule on our default judgment request. No order ever dismissed Lionsgate or resolved our claims on the merits; the Amended Complaint (Doc. 85) rendered Doc. 45 moot. The omission, together with clear evidence of proper service and default, created a reasonable expectation of default judgment (Doc. 162).

The court's later retroactive inclusion of Lionsgate in adverse orders (Doc. 168) denied Plaintiffs fair notice, an opportunity to be heard, and the default procedures required by Fed. R. Civ. P. 55. This sequence—failure to address default, then adverse inclusion—demonstrates arbitrary, prejudicial conduct and due process violations. In truth, all Defendants were in default as established in Doc. 162 and Doc. 85.

## 4. Procedural Manipulation and Denial of Due Process (Omission of Lionsgate and Barbara Hunt)

As stated in Document 162 (motion for judgment, March 19, 2018), Plaintiffs raised Lionsgate's and Barbara Hunt's default and procedural irregularities in the district court's orders, specifically Document 138. After Defendants filed

Document 157, we pointed out that Document 138 resolved claims against some, but not all, defendants—leaving Lionsgate unaddressed despite its default. We understood this omission as the court recognizing Lionsgate's default, and, with Document 85, further defaults for all defendants, expecting default judgment. By then, all defendants were in default for not answering the amended complaint (Doc. 85). We noted Document 119 should have entered default, and Document 138 was improper for ignoring defaults established by Doc. 85. Despite these defaults and being a named defendant, Judge Thrash continued to rule, issuing at least seventeen orders while an appellee/defendant. This was improper under federal rules and due process, and was overlooked by the appellate court due to withheld documents (Docs. 85, 94, 100, 119).

Had the full record—including our arguments in Doc. 162, proof of Lionsgate's default, and evidence of Judge Thrash's conflict—been before the appellate court, it would have shown these orders were void and default judgment should have been entered for Plaintiffs.

## 5. Procedural Manipulation and Denial of Due Process (Defendant Judge as Adjudicator)

Plaintiffs emphasize that Document 117 (September 13, 2017) was our formal response to Defendant Judge Thrash's Document 116, in which the government

sought dismissal of Judge Thrash as a defendant and argued that Plaintiffs needed party consent or court leave under Rules 20 and 21 to add him. In Doc 117, which was omitted from appellate review, Plaintiffs expressly objected and clarified that amendment was proper as a matter of right under Rule 15(a)(1), following Defendants' Rule 12(b) motion (Doc. 74), and no joinder or leave was required. Plaintiffs further argued that Judge Thrash's continued adjudication after being added as a defendant violated 28 U.S.C. § 455 and multiple constitutional amendments, and that all orders issued by a conflicted judge are void.

Plaintiffs stated:

*"A Judge is not above the laws of the United States and are bound by their oaths... Plaintiffs request that the case be reassigned to a different Judge due to Prejudice and bias of the case, prior case of the Appellants and violation of the Plaintiffs constitutional rights of the 5th, 6th, 7th, 11th and 14th Amendments, Federal Rules of Procedure 4, 7, 11, 12, 26, 33 and 55 and 18 U.S.C. 1961-1965... "*

Doc 117 also rebutted the government's claims regarding improper service and judicial immunity, citing controlling authority that immunity does not extend to acts taken in clear absence of jurisdiction or in violation of due process. Plaintiffs demonstrated that Judge Thrash issued orders (including Docs. 95 and 96) in favor

of other defendants while he was himself a defendant, thereby acting in excess of jurisdiction and outside the scope of immunity.

Additionally, Document 162 (renewed motion for judgment) and Document 99 (motion for judgment as a matter of law) raised that Defendants were in procedural default for failing to answer the operative amended complaint (Doc. 85). Plaintiffs sought default judgment and to end the case before trial under Rule 50(a) or 50(b), as no legal basis existed to proceed absent excusable neglect. Continued litigation, despite clear default, wasted judicial resources and forced Plaintiffs into unnecessary, duplicative appeals.

These judicial actions caused severe financial and personal hardship for Plaintiffs, diverting time and resources from family and life, compounded by the COVID-19 pandemic and personal losses in 2022, 2023, and 2024. Plaintiffs endured disparagement, bias, and prejudice as pro se litigants, exacerbated by the court's refusal to enforce procedural rules and persistent denial of due process.

The omission of Document 117 from the appellate record violated Plaintiffs' rights to due process and meaningful appellate review. Its exclusion deprived the Eleventh Circuit of the full factual and legal context necessary to review Plaintiffs' claims of judicial misconduct, jurisdictional defect, and denial of due process, and materially prejudiced Plaintiffs by concealing the basis for recusal and

reassignment. This constitutes a structural error requiring recall of the mandate and vacatur of all tainted orders. Withholding other critical documents—including Docs. 85, 94, 99, 100, 119, and 162—further prevented the Eleventh Circuit from recognizing the full extent of judicial conflict, procedural default, and extraordinary prejudice. Had the appellate court received the complete record, including Plaintiffs' arguments on immunity, default, and misconduct, it would have been compelled to require recusal, vacate all tainted orders, and enter judgment for Plaintiffs.

## 6. Judicial Misconduct

Piecemeal Appeals, Procedural Gamesmanship, and Ongoing Merits Limbo

Plaintiffs respectfully submit that the very existence of this second appeal (18-13553) is a direct result of intentional procedural manipulation and prejudice engineered by the district court and defendants. The record is clear: after Plaintiffs filed their notice of appeal in 17-14866, the district court continued to issue dispositive orders—including summary judgment (Doc. 157), a sweeping All Writs Act injunction (Doc. 168), and a purported final judgment (Doc. 169)—all while the first appeal remained open and pending until December 20, 2018.

Despite this, both the district court and the defense repeatedly misrepresented to the appellate court that the first appeal had "closed," using this false procedural

narrative to justify further adverse rulings. The appellate court, in turn, stated that it could not address certain issues from 17-14866 because they had allegedly already been resolved by another jurisdiction. This sequence of events was not happenstance—it was the result of deliberate efforts to fragment Plaintiffs' claims, prevent timely consolidation of appeals, and foreclose a unified merits-based review.

The result is that the merits of Plaintiffs' Civil RICO claims remain in limbo to this day. No court has ever entered a ruling on the merits of Civil RICO. Instead, the district court has invoked an injunction—entered while the first appeal was pending, by a judge who was both a defendant and an appellee—to bar Plaintiffs from pursuing any further Civil RICO actions or post-judgment motions. This injunction, notably, was grounded in state law, not federal RICO standards, and was used to foreclose relief in a case that the judge himself repeatedly identified as a Civil RICO action (even as he mischaracterized the "final" judgment as copyright infringement).

The prejudice is compounded by the procedural default of all defendants as of Doc. 85 (filed July 5, 2017). There should never have been any further dispositive orders, let alone a second appeal; the court should have entered default judgment in Plaintiffs' favor, as mandated by Federal Rule of Civil Procedure 55. Instead, the

judge's continued rulings, while he was a named defendant, created a procedural morass that denied Plaintiffs due process, wasted judicial resources, and forced Plaintiffs into unnecessary, costly, and emotionally taxing litigation and appeals.

**In sum:**

- The second appeal exists only because the district court refused to consolidate claims and appeals, and because the defendants' default was never adjudicated.

- The district court's orders (Docs. 157, 168, 169) were entered without jurisdiction, during the pendency of the first appeal, and are void ab initio.

- The injunction is both procedurally and substantively improper: it was issued by a conflicted judge, based on state law, and without any ruling on Civil RICO merits.

- Plaintiffs remain barred from full adjudication of their claims, in a state of "meritorious limbo," with no ruling on Civil RICO and ongoing prejudice.

- The appellate court's inability to review the full record—due to withheld documents and misrepresentations—further prejudiced Plaintiffs and perpetuated the injustice.

Plaintiffs respectfully request that this Court recall the mandate, vacate all tainted orders, and direct that all claims and post-judgment motions be consolidated and

adjudicated on the merits before a neutral judge, so that the integrity of the judicial process may finally be restored.

## 7. Procedural Default After Document 85 and the Cascade of Prejudice

After the filing of Document 85 (the amended complaint), which named all defendants and was properly served, the law required the clerk to enter default against all defendants who failed to answer within the prescribed time. Under Federal Rule of Civil Procedure 55, the clerk's entry of default is mandatory where, as here, more than two and a half months passed without any defendant answering. Plaintiffs moved for default judgment in Document 119 (October 6, 2017), and the district court was obligated to enter default and proceed to judgment.

No further substantive orders—no summary judgment, no injunctions, no merits rulings—should have appeared on the record except those related to default and default judgment.

Instead, the district court, presided over by a judge who was himself a named defendant and appellee (as reflected in both 17-14866 and 18-13553), continued to issue at least seventeen additional orders, including dispositive and post-judgment rulings, in flagrant violation of due process and 28 U.S.C. § 455. The judge's refusal to recuse, despite a pending recusal motion and overwhelming evidence of

conflict, compounded the prejudice. The appellate court was unable to appreciate the full gravity of this misconduct because the district court withheld critical documents—such as Document 85 (amended complaint), Document 94 (summons to Judge Thrash), Document 100 (proof of service), and Document 119 (motion for default judgment)—from the appellate record.

**8. After Document 170 in both appeals, the procedural abuses continued:**
Plaintiffs now sit with post-judgment Rule 60(b)(4), (6), and (d)(3) motions that have been summarily denied by the same conflicted judge, who issued yet another interlocutory order with no legal substance or merits, and who was not even authorized to act while an emergency intervention was pending with the chief judge (who failed to act in time). The judge's status as an appellee and defendant was never resolved; he continued to rule on post-judgment motions in both appeals, aided by the appearance of the AUSA, Lori M. Baranick, as counsel for the judge in both cases. These cases did not close until (17-14866, December 20, 2018), yet the defendant district judge entered orders as early as (August 10, 2018). The piecemeal appeal did not open until (18-13553, August 20, 2018) and only a 10 day lapse in appellate jurisdictional timeframe without overlap and ended (18-13553, September 10, 2019).

Critically, the judge and defendants have repeatedly and unlawfully used an injunction (Doc. 168)—issued while the first appeal was pending, by a conflicted judge—as a basis to deny Plaintiffs' post-judgment and Rule 60(b) motions. This is in direct contravention of U.S. Supreme Court precedent, which holds that post-judgment motions for fraud on the court or judicial misconduct cannot be barred by injunctions. Despite Plaintiffs' repeated notice to the court (see Docs. 199, 203), the judge denied all post-judgment motions on the ground that Plaintiffs had not obtained his permission, as purportedly required by the injunction—an argument that is both legally and factually baseless, and which defendants have continued to advance in bad faith omnibus motions.

## 9. No meaningful review of the merits of Rule 60(b) or Civil RICO has ever been conducted.

The operative complaint (Doc. 85) remains unanswered and in default. All post-judgment filings by Plaintiffs have been denied without substantive consideration, and the judge has refused to permit discovery or trial on the RICO claims, instead relying on a procedurally and substantively defective injunction rooted in state law and not federal RICO standards.

After Document 170, Plaintiffs sought to move the case forward on the RICO claims, including requests for discovery and trial, but were repeatedly denied by

orders [insert order numbers, e.g., 180, 195, etc.], with no opportunity to oppose or preserve rights. The court's orders continued to treat the case as closed on copyright infringement, despite the fact that Civil RICO claims were never adjudicated.

## 10. Mandates Effect on Plaintiffs Third Appeal

If these mandates (17-14866 and 18-3553) are not recalled, Plaintiffs will be forced into a third appeal limited only to post- (Doc. 170) issues, resulting in further prejudice and fragmentation.

The misconduct and due process violations began with 17-14866 and continued through 18-13553. Only by recalling both mandates and consolidating all issues for review before a full panel or en banc hearing can Plaintiffs' constitutional rights be vindicated and the integrity of the judicial process restored.

## 11. Jurisdictional Defect, Perjury, and Record Manipulation: The Need for Mandate Recall and Consolidation

Plaintiffs respectfully submit that the district court's handling of the so-called "final" judgment under Rule 54(b) was fundamentally defective, both as a matter of law and of fact. When the Eleventh Circuit raised a jurisdictional question in Appeal No. 17-14866—specifically, whether the district judge's Rule 54(b)

certification was proper as to all claims and parties—the judge responded by asserting that his orders disposed of all of Plaintiffs' claims. This was not true. **First**, the court never adjudicated the Civil RICO claims on the merits. To this day, there is no ruling on Civil RICO, and the operative complaint remains unanswered and in default. **Second**, the judge intentionally left Lionsgate out of the "final" order, despite Defendants' own request (Doc. 74) for judgment as to all parties. This was not an oversight; it was a calculated move to allow Lionsgate to later seek an injunction (Doc. 168) that would bar Plaintiffs from pursuing relief or exposing judicial and defense misconduct—effectively erecting a procedural shield to silence Plaintiffs and prevent consolidation of all issues on appeal or in post-judgment motions.

**Third**, the judge's actions while a named defendant—including his answers to jurisdictional questions, certification of finality, and entry of dispositive orders—constitute perjury and fraud on the court. He repeatedly made it appear that the procedural defaults were of no consequence, when in fact, all defendants were in default as of Doc. 85. This manipulation of the record and the law enabled the piecemeal appeals, the perpetuation of void orders, and the ongoing denial of due process.

**Fourth**, the integrity of the record itself has been compromised. Plaintiffs have discovered that Document 85, the amended complaint, was altered on July 12th—after its original filing on July 5th—without Plaintiffs' knowledge or consent. The modified version is shorter, missing critical information, and falsely states that a defendant was "added" when, in reality, Judge Thrash was already a defendant from the outset. Plaintiffs never amended Doc. 85, and our original, unmodified copy remains on our hard drive. The docket notation of a modification on July 12th, with no legitimate basis, strongly suggests unauthorized alteration—possibly by hacking or internal tampering. Plaintiffs reported this to the appeals court via an IC3 report, yet the issue has never been addressed.

**Fifth**, critical exhibits to Doc. 85—namely, Docs. 86 and 88—contained evidence of the conflict of interest between Judge Thrash and defendant Tyler Perry, including the "Too Close to Home" TV show and the suspiciously named "Annie Thrash" character. Despite raising this issue repeatedly, no defendant has ever substantively rebutted these allegations, instead resorting to ad hominem attacks and pejorative language, further evidencing bias and lack of impartiality.

**In sum:**

- The judge's certification of finality was knowingly false and jurisdictionally defective.

- The manipulation of Lionsgate's status and the issuance of the injunction were calculated to prevent full review and consolidation.

- The alteration and suppression of key documents (Doc. 85, 86, 88) constitute fraud on the court and a denial of due process.

- Plaintiffs' efforts to report and remedy these issues have been ignored, and the merits of Civil RICO remain in limbo.

- Only by recalling both mandates can this Court restore Plaintiffs' rights, allow consolidation of all issues, and ensure a full, merits-based review free from procedural gamesmanship and judicial misconduct.

## IV. NEED FOR RECALL OF MANDATE AND CONSOLIDATED REVIEW

It is essential for this Court to consider the current status (Doc. 196-212), reply to (Doc. 212) possibly (Doc. 213) and treatment of Plaintiffs' post-judgment motions (Docs. 146-195), including prior case 17-14866 (Docs. 1-144) those filed under Rule 60(b) and related authorities to all be enjoined. The ongoing denial of these motions by the same conflicted judge, coupled with the use of the prior mandate and injunction to bar further filings, demonstrates that the mandates are not merely procedural—they are actively preventing Plaintiffs from obtaining a fair hearing on the merits of their claims of fraud on the court, judicial misconduct, and due process violations.

Plaintiffs respectfully submit that recall of the mandate is necessary to remove this procedural barrier, allow full appellate review of all issues, and ensure that post-judgment motions are adjudicated on the merits by a neutral tribunal. Without recall, Plaintiffs' rights will remain unredressed, and the integrity of the judicial process will continue to be undermined.

Recall of the mandate in this appeal is necessary to:

- Vacate all orders and judgments entered after the court was divested of jurisdiction or by a conflicted judge;

- Ensure that Plaintiffs' post-judgment motions—including all Rule 60(b) and 60(d) claims of fraud, misconduct, and due process violations—are fully heard and not procedurally barred by prior mandates or appellate precedent;

- Consolidate all issues from both appeals (17-14866 and 18-13553) for plenary review and adjudication under one umbrella, in the interest of justice and judicial economy;

- Prevent further manifest injustice and restore the integrity of the judicial process.

## V. CONCLUSION RELIEF REQUESTED

**Plaintiffs respectfully request that this Court:**

1. Recall the mandate in Case No. 18-13553 and vacate all orders and judgments entered by Judge Thrash after he was named as a party and after the filing of the notice of appeal, including Docs. 145–170, 208, and all related orders;

2. Direct the district court to transmit the full and complete record, including all omitted documents and exhibits, for proper appellate review;

3. Order reassignment to a neutral judge for all further proceedings;

4. Clarify that no prior mandate, ruling, or appellate precedent shall preclude Plaintiffs from obtaining full review and relief on all claims of fraud on the court, judicial misconduct, and due process violations, including all post-judgment motions;

5. Consolidate all issues from both appeals (17-14866 and 18-13553) for unified review and adjudication;

6. Grant such further relief as is just and necessary to restore Plaintiffs' due process rights and the integrity of the judicial process.

Dated: On the 28th Day of August

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, the undersigned certifies that the following persons and entities have an interest in the outcome of this case:

1. Terri Lowe – Plaintiff/Appellant -Individual

2. William James – Plaintiff/Appellant - Individual

3. Tyler Perry – Defendant/ Appellee - Individual

4. Tyler Perry Studios – Defendant/Appellee -Private Domestic Corporation

5. The Tyler Perry Company – Defendant/ Appellee – Private Domestic Corporation

6. Oprah Winfrey – Defendant/Appellee - Individual

7. Oprah Winfrey Network (OWN) Defendant/ Appellee – Public Corporation

8. Lionsgate Entertainment – Defendant/Appellee - Public Corporation

9. Barbara Hunt - Defendant/Appellee – Individual

10. HARPO – Defendant/Appellee - Domestic Corporation (Unknown/Public or Domestic Corporation)

11. Tom J Ferber (Pryor and Cashman, LLP)– Attorney for Defendants/Appellees -Tyler Perry, Tyler Perry Studios and The Tyler Pery Company

12. Richard Gordon, Esq – Attorney for Defendants/Appellees – Oprah Winfrey, Oprah Winfrey Network (Own), HARPO, Lionsgate Entertainment and Barbara Hunt

13. David Zaslov (OWN) – Not a Party – Interested Person - Part Owner - Public Corporation

Corporate Disclosure Statement:

The undersigned will supplement this certificate as necessary.

Respectfully submitted,

Dated: On the 28th Day of August

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and 11th Cir. R. 32-4, I

certify that this motion complies with the type-volume limitation set forth in FRAP

27(d)(2). According to the word-processing system used to prepare this document,

the motion contains (5,196) words, excluding the parts of the motion exempted by

FRAP 32(f). The motion has been prepared in a proportionally spaced typeface

(Times New Roman, 14-point font) with double spacing and 1-inch margins.

Dated: On the 28th Day of August

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## VI. CERTIFICATE OF SERVICE

We hereby certify that on 08/28/2025, we filed the foregoing Motion to Recall

Mandate and all supporting exhibits by Mail as required by the Eleventh Circuit's

filing instructions.

Executed on August 28, 2025,

**Defendants Attorneys:**

| | | |
|---|---|---|
| Lori M. Beranek | Tom J. Ferber, Esq | Richard Gordon, Esq |
| Assistant United States | 7 Times Square | 1495 Powers Ferry |
| Attorney | New York, NY 10036- | Road Ste 101 |
| 600 U.S. Courthouse | 6569 | Marietta, GA 30067 |
| 75 Spring Street SW | | |
| Atlanta, GA 30303 | | |

Executed on 28th Day of August, 2025.

Respectfully submitted,

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff